## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | |
|---|---|
| SANDRA HURUBEAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   NO. 2:05-CV-187 |
| | ) |
| GEORGE PABEY and CHARLES | ) |
| PACURAR, Individually and in | ) |
| their official capacities as | ) |
| Mayor and City Controller of the | ) |
| City of East Chicago, Indiana, | ) |
| respectively, the CITY OF EAST | ) |
| CHICAGO, INDIANA, a municipal | ) |
| corporation, and the EAST | ) |
| CHICAGO SANITARY DISTRICT, a | ) |
| special taxing district, | ) |
| | ) |
| Defendants. | ) |

### OPINION AND ORDER

This matter is before the Court on Defendants' Objections to Magistrate Judge's September 14, 2005 Ruling Denying Their Motion to Disqualify the Law Firm of Smith & DeBonis, LLC and Motion For Protective Order or, in the Alternative, Motion for Discovery on the Extent of Confidential and Privileged Information Obtained in Prior Representations and Motion to Stay Proceedings and Motion to Amend, filed by The City of East Chicago, George Pabey and Charles Pacurar on September 27, 2005. For the reasons set forth below, these objections are **OVERRULED**. Accordingly, Magistrate Judge Cherry's and Magistrate

Judge Rodovich's orders at issue are **AFFIRMED** in all respects.


BACKGROUND[1]

On October 26, 2004, George Pabey won a special Democratic mayoral primary election against Robert A. Pastrick, who had been Mayor of East Chicago ("City" or "City of East Chicago") since January 1, 1972.  Under the administration of Mayor Pastrick, the law firm of Smith & DeBonis, LLC ("Smith & DeBonis"), and specifically Attorney Anthony DeBonis, Jr., served as the City of East Chicago's primary outside counsel, having served in that role for 27 of the 32 years during which Pastrick was mayor of the City. The firm's representation of the City included numerous general matters as well as employment-related matters and advice on hiring practices.  In addition, Smith & DeBonis defended the City against complaints alleging violations of civil rights pursuant to 42 U.S.C. section 1983 and/or section 1981 in at least six actions filed from 1998 to 2004.

In November 2004, Smith & DeBonis mailed a multi-colored advertisement to all City employees, explaining the firm's experience in civil rights litigation and the firm's willingness to represent

---

[1] Defendants concede that the facts, as determined by the magistrates, are undisputed. (Defs' Obj., p. 5) Accordingly, the facts as set forth be Magistrate Paul Cherry in his September 13, 2005, Order, which Magistrate Judge Rodovich adopted in their entirety in his September 14, 2004 Order, are set forth here in total.

individuals whose civil rights have been violated.[2]  Attorney DeBonis
identified the employees to whom he sent the advertisement by asking
a paralegal employed by the City to obtain a list of all City
employees with their names and addresses.  The paralegal stated in her
declaration that Attorney DeBonis had informed her he was going to use
the list to put something together informing the employees of their
rights in case of termination.

On December 29, 2004, as the Democratic-Party-candidate, George
Pabey, defeated his Republican challenger in the special general
election for mayor of the City of East Chicago.  Pabey was sworn in
and qualified as mayor on December 29, 2004, and immediately took
control of the mayor's office.

One of Mayor Pabey's initial acts as mayor was the appointment of
Nathaniel Ruff and Carmen Fernandez as corporation counsel, replacing
Frank Callahan, who had served as corporation counsel under Mayor
Pastrick.  On December 30, 2004, Attorney DeBonis wrote to Attorney

---

[2]The advertisement provided, in relevant part:
   For years Smith & DeBonis, LLC has been
   actively involved in lawsuits where public
   employees' First Amendment rights were
   violated. Do not let your job with the
   government get in the way of your First
   Amendment rights! Have you or someone you
   know been fired or denied a promotion because
   of political beliefs or because of your right
   to exercise free speech? If the answer is
   "Yes," contact Smith & DeBonis LLC today to
   set up a free consultation.

Def. Br., Exh. G.

Ruff, informing him that he was withdrawing from the representation of the City.  Attorney Ruff acknowledged this letter by his letter of January 3, 2005, asking that Attorney DeBonis turn over files. Attorney DeBonis responded in turn by letter, indicating the active matters from which he had withdrawn and claiming a retaining lien under state law on the files pending payment.  However, Attorney DeBonis' services as attorney for the East Chicago Sanitary District, a distinct governmental entity from the City, continued until his resignation on February 21, 2005, as part of a comprehensive settlement agreement with the City acting through Mayer Pabey, Attorney Ruff, and Attorney Fernandez.  As counsel for the Sanitary District, Attorney DeBonis provided advice on issues such as employee evaluations and discipline, employee salary and wage schedules, affirmative action and new employee policies, and the collective bargaining agreement.

On February 7, 2005, Attorney Fernandez wrote to Smith & DeBonis to inform the firm that the City objected on ethical grounds to Smith & DeBonis' representation of an individual (Alexius Tapia) in an action against the City.  Attorney Terrance Smith, of Smith & DeBonis, responded that there was no conflict and that the firm would continue to represent the citizens of East Chicago.

On March 5, 2005, a settlement agreement was executed in a civil action brought by Smith & DeBonis against Mayor Pabey (the City was not a named defendant) on behalf of five former Sanitary District

-4-

commissioners in connection with their dismissals by Mayor Pabey ("Guzman settlement agreement"). The Guzman settlement agreement included a provision addressing conflicts of interest by Smith & DeBonis in litigation against Mayor Pabey and provided, in relevant part:

> The City of East Chicago and its Sanitary District acknowledges that they have no information or knowledge that the District's long-time attorney, Anthony DeBonis, Jr., has engaged in representing any conflicting interests in connection with his work as Sanitary District attorney, and in connection with his occasional work as attorney for the City of East Chicago. The said City and District waive, and shall not in the future assert, any claim of conflict of interest against Mr. DeBonis, whether known or not known, in connection with his future representation of persons with claims or causes arising after December 29, 2004, which are adverse to the City; provided, however, that this waiver shall not apply, if and in the event the interest of the City or District would be compromised or jeopardized by counsel's use of any privileged or confidential information he acquired during and by means of, his former representation of either the City or the District. By "conflict of interest" is meant those conflicts outlined, particularized and prohibited under the Indiana Rules of Professional Conduct Nos. 1.7 (especially sup-paragraph 9), and 1.9 and 1.11. Attorney DeBonis will move to withdraw his appearance in all pending East Chicago Sanitary District Litigation.

Def. Br., Ex. K.

Between April 13, 2005, and July 21, 2005, 10 civil complaints, including the Complaint in this matter, were filed in state court on behalf of the Plaintiffs by Smith & DeBonis and were subsequently

removed to the District Court for the Northern District of Indiana.[3]
Generally, the complaints allege violations of the Plaintiffs' civil
rights by Mayor George Pabey, Charles Pacurar, and the City of East
Chicago under 42 U.S.C. section 1983 in relation to the Plaintiffs'
termination from their employment by Mayor Pabey shortly after he took
office.  The Plaintiffs allege that the terminations were motivated by
political retaliation as each was a political supporter of former
Mayor Pastrick.  Certain Caucasian and African-American Plaintiffs
also claim race discrimination, alleging that Pabey fired them in
order to replace them with Hispanic supporters.

On June 23, 2005, counsel for the Defendants sent a letter to
Smith & DeBonis advising of the Defendants' belief that there were
substantial grounds for moving to disqualify the firm for its
representation of the Plaintiffs in these cases.  Attorney DeBonis
responded that, under the circumstances, he would not discuss any
matter with the Defendants involving issues of professional
responsibility.  The Defendants filed a separate but essentially
identical motion to disqualify in each case.

---

[3]The cases are *Sandra Hurubean v. George Pabey, et al.*,
2:05-cv-187-RL-APR; *Edward Skrundz v. George Pabey, et al.*, 2:05-
cv-188-PS-PRC; *Lilia Ramos v. George Pabey, et al.*, 2:05-cv-189-
PS-PRC; *Jose F. Valdez III v. George Pabey, et al.*, 2:05-cv-190-
RL-PRC; *Kevin Knight v. George Pabey, et al.*, 2:05-cv-191-JTM-
PRC; *Myria DeLaCruz v. George Pabey, et al.*, 2:05-cv-192-RL-APR;
*Marcelo Garcia, et al. v. George Pabey, et al.*, 2:05-cv-217-RL-
PRC; *Rosario C. Valdez v. George Pabey, et al.*, 2:05-cv-255-RL-
PRC; *Dominic A. Guzman v. George Pabey, et al.*, 2:05-cv-256-RL
APR; and *Arcides Santiago v. George Pabey, et al.*, 2:04-cv-282-
PS-APR.

On September 13, 2005, Magistrate Judge Cherry denied Defendants' motions to disqualify the law firm of Smith & DeBonis, LLC ("Smith & DeBonis"), from the proceedings in *Skrundz*, *Valdez III*, *Knight*, *Garcia*, *Valdez* and *Ramos*. The next day Magistrate Judge Rodovich denied Defendants' motions to disqualify Smith & DeBonis in *Hurubean*, *Santiago*, *Guzman* and *DeLaCruz*, by adopting Magistrate Judge Cherry's September 13, 2005, order.

Defendants have filed their instant objections requesting the district court to overturn Magistrate Judge Cherry and Magistrate Judge Rodovich's (collectively "magistrates") rulings in various respects. At the time Defendants filed their objections, this Court was the presiding district court over *Hurubean*, *Valdez III*, *DeLaCruz*, *Garcia*, *Valdez* and *Guzman*; Judge Simon was the presiding judge over *Skrudz*, *Ramos* and *Santiago*; and Judge Moody was the presiding judge over *Knight*. Subsequently, however, all of these cases were reassigned to this Court.

Defendants have made the following objections to the magistrates' orders:

> (1) The Magistrate erred in his legal conclusion that "the City, as a client, changed when Pabey became Mayor[]" and, thus, a conflict of interest could not exist between Smith & DeBonis's current representation of Plaintiffs against the City and the firm's 27-year representation of the City. Relying on *Laboy v. Trujillo Panisse*, 213 F. Supp. 2d 54 (D.P.R. 2002), the magistrate reasoned that "[a]lthough Smith & DeBonis previously represented the same City of East Chicago in name, it did not represent the same City in substance; the people making up

-7-

the City – those that breathe life into the governmental unit – were completely different."

(2) The magistrate also erred by finding that, despite Smith & DeBonis's attempts to solicit representation against the City(during former Mayor Pastrick's administration) while employed by the City (again, during former Mayor Pastrick's administration), a violation of Ind. R. Prof. Cond. 1.7 did not occur requiring disqualification.

(3) The magistrate further erred in finding the issuance of a protective order moot and in not staying the proceedings to allow discovery on the extent of confidential and privileged information Smith & DeBonis obtained in prior representations.

(4) The magistrate erred in refusing to allow amendment of the record to include the list of names attached to a declaration submitted by Defendants that apparently were not accepted by the electronic pleadings filing system.

DISCUSSION

The Court's review of any orders on nondispositive matters made by magistrate judges, such as those at issue here, is governed by Rule 72(a) of the Federal Rules of Civil Procedure. Rule 72(a) provides that, "the district court to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1). "The clear error standard means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co. Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997).

With these principles in mind, the Court will review the

-8-

magistrate judges' respective orders in conjunction with Defendants'
objections, which will be addressed in turn.

### "The City, as a client, changed when Pabey became Mayor."

In their original motions to disqualify, Defendants proffered
that, with the City as a former client, Smith & DeBonis is barred from
representing the Plaintiffs against the City under Rule 1.9(a) and (c)
because the representation in this matter is "substantially related"
to Smith & DeBonis' defense of the City in other cases and its general
employment matters.  In the process of denying Defendants' motions,
with respect to Rule 1.9(a), the magistrates found that "the City, as
a client, changed when Pabey became Mayor" and "[a]lthough Smith &
DeBonis previously represented the same City of East Chicago in name,
it did not represent the same City in substance; the people making up
the City – those that breathe life into the governmental unit – were
completely different."  Defendants argue that these conclusions are
contrary to law.  To put Defendants' argument and the magistrate's
findings in context, however, a brief recitation of the applicable law
and the magistrates' findings are first required.

As the magistrates correctly noted:

> Under Northern District of Indiana Local Rule
> 83.5, "[t]he Rules of Professional Conduct, as
> adopted by the Indiana Supreme Court, and the
> Standards for Professional Conduct, as adopted by
> the Seventh Circuit, shall provide standards of
> conduct for those practicing in this court." L.R.
> 83.5. Turning to the Indiana Rules of Professional
> Conduct, Rule 1.9(a) provides:

-9-

> A lawyer who has formerly represented a client in a matter shall not thereafter: (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Ind. R. Prof. Cond. 1.9; *see also Jones & Henry, Engineers, Ltd. v. Town of Orland, Indiana*, 942 F. Supp. 1202, 1206 (N.D. Ind. 1996).

In addition to the Rule, the Seventh Circuit Court of Appeals has adopted a common law, three-step analysis to determine attorney disqualification. First, the Court must assess whether a "substantial relationship" exists between the subject matter of the prior and present representations. *Cromley*, 17 F.3d at 1064 (quoting *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983) (citing *LaSalle Nat'l Bank v. Lake County*, 703 F.2d 252, 255-56 (7th Cir. 1983)); also citing *Goot*, 894 F.2d at 235; *Freeman*, 689 F.2d at 722; *Westinghouse Elec. Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 225 (7th Cir. 1978)). To determine whether a "substantial relationship" exists between the subject matter of the prior and present representations, the Court conducts a separate three-step inquiry:

> First, the trial judge must make a factual reconstruction of the scope of the prior legal representation. Second, it must be determined whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Third, it must be determined whether that information is relevant to the issues raised in the litigation pending against the former client.

*Jones & Henry*, 942 F. Supp. at 1206 (quoting *LaSalle*, 703 F.2d at 255-56). The Seventh Circuit has elaborated that "the determination of whether

-10-

there is a substantial relationship turns on the possibility, or appearance thereof, that confidential information might have been given to the attorney in relation to the subsequent matter in which disqualification is sought." *Id.* (citing *Freeman*, 689 F.2d at 722 n. 10)). The purposes of the substantial relationship test are (1) to prevent disclosure of client confidences; (2) to protect a client's interest in the loyalty of counsel; and (3) to prevent the appearance of conflict of interest that is difficult to dispel in the eyes of the public, the bench, and the bar. *Exterior Sys.*, 175 F. Supp. 2d at 1116 (citing *Analytica, Inc. v. NPD Research Inc.*, 708 F.2d 1263, 1266 (7th Cir. 1983)).

To determine whether Smith & DeBonis should be disqualified in the current cases, Magistrate Judge Cherry sought to determine whether Smith & DeBonis' prior representation of the City was "substantially related" to the firm's representation of the Plaintiff in this case against the City. Because it was not clear that the "substantial relationship" test was met, the magistrates reconstructed the scope of Smith & DeBonis' prior representation of the City to determine whether it would be reasonable to infer that attorneys in Smith & DeBonis' position would have received confidential information, and whether that information is relevant to the present litigation.

The magistrates began this analysis by noting that Smith & DeBonis did not defend the City against the Plaintiff in this case or any other. Thus, the magistrates found, Smith & DeBonis did not possess any case-specific information in relation to this case. That was not the end of the inquiry, however. The magistrates went on to examine Smith & DeBonis' prior representation of the City of East

-11-

Chicago in general.  In doing so, the magistrates found that "the City, as a client, changed when Pabey became Mayor."  This is because "[w]ith a new administration comes new strategies, new agendas, new politics, and new policies."  Thus, the magistrates found, any insight Smith & DeBonis gained into the City's employment-related activities, such as hiring practices, evaluations or disciplining City employees, or any insight the firm gained into the City's litigation strategy was extinguished with the transition from the Pastrick administration to the Pabey administration.

Similarly, the magistrates held that any shared confidences between Smith & DeBonis and the City under the Pastrick administration were unlikely related to the instant litigation as the only information relevant to the case pending before the Court was the intent of Mayor Pabey in terminating the employment of the Plaintiffs. Relying on *Ramos v. Trujillo*, 213 F. Supp. 2d 54 (D.P.R. 2002), the magistrates went on to state "[a]lthough Smith & Debonis previously represented the same City of East Chicago in name, it did not represent the same City in substance; the people making up the City– those that breathe life into the governmental unit– were completely different."

Ultimately, employing the Seventh Circuit's disqualification analysis, the magistrates found "that matters in which Smith & DeBonis represented the City of East Chicago under the Pastrick Administration [were] not substantially related to the current litigation and that,

-12-

although it is reasonable to infer that some confidential information was imparted on Attorney DeBonis during his representation of the City, the information is not relevant to the current litigation." (9/13/05 order, p. 18)  Consequently, the magistrates found that Smith & DeBonis should not be disqualified from representing the Plaintiff in this case.

Upon review of Defendants' objections, it is evident that they misunderstand the scope of the magistrates' findings.  Defendants are under the impression that the magistrates held that the City of East Chicago transformed into a separate, distinct entity upon Pabey becoming Mayor.  Further, Defendants believe the magistrates ruled that "[b]ecause the mayor changed, Smith & DeBonis are unconstrained by the substantial relationship test, which otherwise would have disqualified the Firm[.]" (Defs.' Obj, p. 6).  Being under this belief as to the magistrates' rulings, Defendants have cited statutory authority as well as case law regarding the autonomy of municipalities.  To support their position that the City was the same entity, regardless of who was mayor, Defendants cite the Indiana statutory scheme, which sets forth that the City of East Chicago is a legal entity apart from its officers.  *See* Ind. Code § 36-1-1-1, *et seq*.  Defendants also cite case law regarding the fact that, in conversations between municipal officials and the municipality's counsel, the municipality and not any individual officer, is the client.  *Ross v. City of Memphis*, No. 04-5298, 2005 WL 2217423, at *7

-13-

(6th Cir. Sept. 14, 2005); *Dexia Credit Local v. Rogan*, No. 02 C 8288, 2004 WL 3119026, at *9 (N.D. Ill. Dec. 21, 2004).

The Court does not take issue with the fact that the City of East Chicago is independent of its municipal officers.  Nor does the Court take issue with the fact that the City of East Chicago was the same statutorily authorized entity before and after Pabey became Mayor. However, contrary to Defendants' belief, this finding does not run afoul of the magistrates' orders.  The magistrates did not hold that the City turned into an entirely different entity after the institution of the Pabey administration.  If they would have so held, then a necessary result would have been that this new entity was never represented by Smith & DeBonis, as that firm did not represent the City under the Pabey administration.  If Smith & Debonis never represented this new entity– the City under the Pabey administration– the magistrates would not have engaged in the Rule 1.9 analysis as this Rule only governs a lawyer's duties to former clients.  However, the fact that the magistrates examined Rule 1.9 illustrates that they believed the City, under the Pabey administration, to be a former client of Smith & DeBonis.  Thus, the magistrates found the City to be the same legal entity under the Pabey administration as it was under the Pastrick administration.

While a city is a distinct legal entity apart from its governing administration, the fact that a city's strategies, agendas, policies and politics are tied to the governing administration cannot be

-14-

ignored.  The magistrates' approach – that any case litigated by Smith & DeBonis for the City under the Pastrick administration only dealt with that specific administration's policies and, therefore, any prior representation under the Pastrick administration is not substantially related to the pending cases under the Pabey administration – seems reasonable and is legally supported by *Laboy*, 213 F. Supp.2d at 58.

### Smith & DeBonis' Solicitation and Rule 1.7(a)

The magistrates correctly noted that Rule 1.7(a) of the Indiana Rules of Professional Conduct only applies to situations involving concurrent, conflicting representation to two clients. The Defendants, without any applicable authority, unsuccessfully sought to expand the scope of this Rule to Smith & DeBonis' solicitations for representation.  While Smith & DeBonis' conduct in this regard is questionable at best, the Defendants have failed to show that Rule 1.7(a) of the Indiana Rules of Professional Conduct applies to solicitations.  Therefore, the magistrates' orders cannot be said to be either contrary to law or clearly erroneous.

### Magistrates' Denial of Defendants' Discovery Request

Defendants sought authorization from the magistrates to conduct discovery on the extent to which Smith & DeBonis have and use privileged and confidential information obtained in their prior representation of the City in their current representation of the

-15-

Plaintiffs in these cases.  Notably, the Attorney DeBonis executed a declaration stating he does not possess any such information.  Based upon Attorney DeBonis' declaration, coupled with the fact Defendants failed to establish that Smith & DeBonis is in possession of any such material, the magistrates denied Defendants request for discovery.  The Federal Rules of Civil Procedure grant magistrates broad discretion in resolving discovery disputes.  *Heyman v. Beatrice Co.*, No. 89 C 7381, 1992 WL 245682, at *2 (N.D. Ill. Sept. 23, 1992).  The Court duly notes this discretion and finds that Defendants have failed to show that the magistrates' decision is either clearly erroneous or contrary to law.

<u>Magistrates' Denial of Defendants' Request
to Supplement Record</u>

Defendants attempted to amend their respective motions to disqualify to include a declaration that was previously omitted by accident.  The magistrates denied this attempt for futility, asserting that the motion would fail even with the added declaration.  Defendants lodge their instant objection "[b]ecause th[e] [magistrates'] ruling was grounded on several other erroneous rulings discussed *supra*, and prevented defendants from making their record . . . ." (Defs. Obj. p. 16)

As the "several other rulings" have been found not to be erroneous, the vague and ambiguous predicate upon which this objection rests is gone.  Consequently, the objection itself must fail.

-16-

CONCLUSION

    For the reasons set forth above, the objections are **OVERRULED.**


**DATED:  December 27, 2005**        **/s/RUDY LOZANO, Judge**
                                              **United States District Court**