```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION

REYMUNDO CAMARILLO, RAMON       )
MENDOZA, SAMUEL RAMOS,          )
                                )
            Plaintiffs          )
                                )
      v.                        )   Case No. 2:05 cv 455
                                )
GEORGE PABEY, Individually and  )
in his official capacity as     )
Mayor of the City of East       )
Chicago Indiana, CITY OF EAST   )
CHICAGO, INDIANA,               )
                                )
            Defendants          )
***************************************************************
MICHAEL EARNESTO LOPEZ, FRANK   )
MORIN,                          )
                                )
            Plaintiffs          )
                                )
      v.                        )   Case No. 2:05 cv 453
                                )
GEORGE PABEY, Individually and  )
in his official capacity as     )
Mayor of the City of East       )
Chicago Indiana, CITY OF EAST   )
CHICAGO, INDIANA,               )
                                )
            Defendants          )
***************************************************************
SANDRA HURUBEAN,                )
                                )
            Plaintiff           )
                                )
      v.                        )   Case No. 2:05 cv 187
                                )
GEORGE PABEY, CHARLES PACURAR,  )
Individually and in their       )
official capacities as Mayor    )
and City Controller of the City )
of East Chicago Indiana, CITY   )
OF EAST CHICAGO, INDIANA,       )
                                )
            Defendants          )
```

OPINION AND ORDER

This matter is before the court on identical Motions to Compel filed by the plaintiffs, Reymundo Camarillo, Ramon Mendoza, and Samual Ramos (2:05-cv-455); Michael Earnesto Lopez and Frank Morin (2:05-cv-453); and Sandra Hurubean (2:05-cv-187), on June 30, 2006. In each case, for the reasons set forth below, the motions are **GRANTED IN PART** and **DENIED IN PART**.

Background

On December 28, 2004, a special mayoral election was held in the City of East Chicago, Indiana. In that election, defendant George Pabey defeated the incumbent mayor, Robert Pastrick, who had held the office for 31 years. Beginning in April 2005, a series of former and current employees of the City of East Chicago filed complaints alleging discriminatory treatment by the new administration based upon the plaintiffs' support of the former mayor. Some 16 cases were filed on behalf of 22 plaintiffs, seven of which also allege discrimination on the basis of race.

In each of the three cases currently before the court, the plaintiffs allege that they were fired according to a policy of retaliation for their support of the former mayor. (Lopez Comp. p. 4; Camarillo Comp. p. 4; Hurubean Comp. p. 4) In addition, Hurubean alleges that she was fired according to a plan to unlawfully replace African-American and White city employees with Hispanic employees. (Hurubean Comp. p. 4)  In both *Lopez* and *Camarillo*, the defendants assert that the plaintiffs' termina-

2

tions occurred pursuant to a reduction in force. (Lopez Ans. p. 8; Camarillo Ans. p. 9) In *Hurubean*, the City alleges that Hurubean's position as special projects officer was properly based on political affiliation. (Hurubean Ans. p. 8)

Despite some differences in the allegations and the defenses in these cases, the discovery dispute before the court arises from seven identical requests for production made in each of the cases by the plaintiffs and similarly resisted by the defendants in each case.

In Request No. 1, the plaintiffs seek a "copy of the entire City of East Chicago payroll" showing amounts paid to all City employees from July 1, 2004 through February 1, 2006. Request No. 2 seeks "each and every payroll action form prepared by any department, agency or instrumentality of the City of East Chicago" for the same time period. Plaintiff's Request No. 4 seeks any "roster, list, database or other document . . . which contains a complete list of the name, city and state of residence, race, age and title of position . . . [of] each and every employee of the City of East Chicago." In Request No. 5, the plaintiffs have asked for "any and all documents . . . showing the balances in each and every bank account . . . for the City of East Chicago" for the period of July 1, 2004 through December 31, 2005. In Request No. 6, the plaintiffs seek a list of all claims approved by the City or its boards for the period of July 1, 2004 through December 31, 2005. In Request No. 8, the plaintiffs seek any filing with the United States Equal Employment Opportunity

3

Commission or the Indiana Civil Rights Commission, "concerning the demographic, racial, and social characteristics of the employees of the City of East Chicago" made since 2004. Finally, the plaintiffs seek "all financial statements or reports of any kind concerning the City of East Chicago . . . filed with the Indiana State Board of Accounts" for the period of July 1, 2004 through December 31, 2005. (Plaintiffs' Exhibit 1, pp. 3-10)

In response to each of the disputed requests, the defendants have asserted that the request is overbroad, oppressive, and unduly burdensome and not relevant to the subject matter of the action. Regarding the requests for city-wide payroll records (No. 1), payroll action forms (No. 2), and financial statements filed with the State Board of Accounts (No. 12), the defendants have provided such records only with respect to the specific departments in which the respective plaintiff was employed. In response to non-disputed requests, the defendants have provided copies of the City's annual reports filed with the State Board of Accounts for the years 2003, 2004 and 2005, and have stated that they will produce the reports of any consultants with respect to the financial management of the City.

## Discussion

A party is entitled to conduct discovery on any matter that is "relevant to the claim or defenses of any party." Federal Rule of Civil Procedure 26(b)(1). Under the Federal Rules, relevancy in discovery includes information that may not be admissible, provided that "discovery appears reasonably calculated to lead to

4

discovery of admissible evidence." Rule 26(b)(1); *Chavez v. Daimler Chrysler Corp.*, 206 F.R.D. 615, 619 (S.D. Ind. 2002). Even after amendments to Rule 26, narrowing relevance from that which is related to the "subject matter" of the case to matters related particularly to claims or defenses, relevance remains broadly construed. *Graham v. Casey's General Stores*, 206 F.R.D. 251, 253 (S.D. Ind. 2002)("The minimal showings of relevance and admissibility hardly pose much of an obstacle for an inquiring party to overcome, even considering the recent amendment to Rule 26(b)(1).").

A party may seek an order compelling disclosure when an opposing party has failed to respond or has provided evasive or incomplete responses. Federal Rules of Civil Procedure 37(a)(2)-(3). The court has broad discretion when reviewing a discovery dispute and "should independently determine the proper course of discovery based upon the arguments of the parties." *Gile v. United Airlines Inc.*, 95 F.3d 492, 496 (7th Cir. 1996). Provided the information sought meets the standard of relevancy described in the Federal Rules, the "burden rests upon the objecting party to show why a particular discovery request is improper." *Kodish v. Oakbrook Terrace Fire Protection District*, 235 F.R.D. 447, 449-50 (N.D. Ill. 2006). The objecting party must show with specificity that the request is improper. *Graham*, 206 F.R.D. at 254. Discovery, however, is not limitless, "and these limits become more formidable as the showing of need decreases." *Rubin v. Islamic Republic of Iran*, 349 F.Supp.2d. 1108, 1111 (N.D. Ill.

5

2004) (*quoting* ***Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130***, 657 F.2d 890, 904 (7th Cir. 1981). In the context of employment discrimination claims, "discovery is generally limited to information about employees in the same department or office, absent a showing of a more particularized need for, and likely relevance of, broader information." ***Chavez***, 206 F.R.D. at 620.

The plaintiffs devote considerable attention to the argument that, because under the Indiana Access To Public Records Act many of the documents sought in this case are public records, the defendants cannot show that producing them in this case is either burdensome or overbroad. *See e.g.* I.C. §5-14-3-3 ("Any person may inspect and copy the public records of any public agency during the regular business hours of the agency, except as provided in section 4 of this chapter."). Whether the disputed documents in these matters are available under this Act is not before the court. Further, the court does not agree with the plaintiffs' suggestion of interplay between the Federal Rules of Civil Procedure and Indiana's Access to Public Records Act. The Indiana Act broadly permits public access to a wide range of government documents. In contrast, the Federal Rules, and consequently the power of the court to enforce discovery, centers upon only that information found relevant to a specific matter before the court. While the plaintiffs may be able to pursue records under the Act, they are not able to rely on it in order to bypass the Federal Rules.

6

Five of the seven disputed requests at issue regard East Chicago's financial condition and obligations during a period from July 2004 through, at the latest, February 1, 2006 (Request Nos. 1, 2, 5, 6, and 12) East Chicago has not demonstrated that the scope of these requests, reaching beyond the plaintiffs' particular department, is irrelevant. Instead, East Chicago has argued that there "is no basis . . . for presuming that a pattern or practice of political discrimination exists," and therefore discovery should be precluded on the plaintiffs' city-wide allegations. (Def. Opp. p. 5) East Chicago's resort to the language of presumptions is misplaced at this stage of these cases. The plaintiffs are not required first to establish a presumption of discrimination before being entitled to conduct discovery on a matter that clearly has been raised in this case.

East Chicago's arguments are largely based on disputing the merits of the plaintiffs' pattern or practice claim. They first argue that because only 22 of approximately 1,000 City employees have chosen to sue the City, the court should "respect the judgment" of the other 978 individuals and conclude that there can be no pattern of discrimination. These individuals, according to the defendants, "on an educated basis [have] plainly concluded that their rights have not been violated." (Def. Opp. p. 3) The defendants' invitation to reach the merits of this case on the basis of non-evidence is declined.

East Chicago further challenges the relevancy of city-wide financial information with arguments based on premature conclu-

7

sions regarding the weight of evidence generated thus far in these matters. East Chicago argues that some of the plaintiffs in related cases have testified that they "never heard that their layoffs . . . were based on their particular political affiliations." (Def. Opp. p. 3) Similarly, East Chicago argues that nine of the 22 plaintiffs in the related cases purportedly were laid off pursuant to seniority provisions contained in collective bargaining agreements. Therefore, the defendants conclude, the plaintiffs are precluded from attempting to prove that political affiliation motivated their terminations. The impact of such evidence, however, presents questions of fact that the court will not address in the course of a discovery matter.

East Chicago further argues that the plaintiffs' pattern or practice allegations are "conclusory" and that evidence of a pattern of discrimination is merely collateral to evidence of discrimination against the plaintiffs individually. East Chicago cites to cases that suggest such evidence is not independently dispositive when a case reaches the merits, but it has not supported the argument that such evidence fails to meet the discovery rules' broad standard of relevancy. To suggest that such evidence is merely collateral in no way also suggests the broader proposition that it is irrelevant. *See e.g.* ***Bell v. Environmental Protection Agency***, 232 F.3d 546, 553 (7th Cir. 2000); ***Balderston v. Fairbanks Morse Engine Division of Coltect Industries***, 328 F.3d 309, 319 (7th Cir. 2003)("Although statisti-

8

cal evidence can be relevant to prove a pattern or practice of discrimination, it is not usually sufficient in itself.").

In addition, East Chicago's reliance on cases limiting the scope of discovery to the specific employment unit of the plaintiff is unavailing. Such limits serve to restrict a plaintiff's discovery of similarly situated employees to those with similar characteristics regarding performance, qualifications, conduct, and supervisors. *See e.g.* **Balderston**, 328 F.3d at 319. In this instance, the discovery sought regards the financial condition of the City during the transition of mayoral administrations and the affirmative defense that the City's financial condition necessitated broad reductions in work force. Consequently, the court finds that the scope of information sought by the plaintiffs regarding the financial condition East Chicago is relevant or at least calculated to lead to the discovery of information relevant to the matters before the court.

Though relevant, East Chicago still may resist discovery on the basis of undue burden. The defendants bear the burden of supporting the contention that these discovery requests are oppressive or unduly burdensome. East Chicago, however, has provided little argument regarding the burden of generating this information. Instead, the defendants primarily argue only with respect to its relevancy. In fact, East Chicago has produced payroll information (Request No. 1), payroll action forms (Request No. 2), and statements filed with the Indiana State Board of Accounts (Request No. 12) for the particular departments

9

represented by the current plaintiffs. The defendants have not provided any further arguments regarding the costs or difficulty of generating this same information for the balance of the City's departments.

Likewise, with respect to Requests 5 and 6, East Chicago's only argument in resisting discovery is based on relevancy. While both of these requests may strain the limits of relevancy, East Chicago has not shown that these requests could not lead to the discovery of relevant information and has provided no argument that generating this information creates particular burdens that outweigh its usefulness.

Accordingly, plaintiffs' motion to compel Requests for Production 1, 2, 5, 6 and 12 in *Camarillo et. al. v. Pabey, et. al.*, 2-05-cv-455; *Lopez et. al. v. Pabey, et. al.*, 2-05-cv-453; and *Hurubean et. al. v. Pabey*, et. al. 2-05-cv-187, is **GRANTED**.

East Chicago's remaining objections to the plaintiffs' requests for production regard Request Number 4, seeking a roster of all East Chicago employees, including name, city, state, residence, race, age, and title, and Request Number 8, seeking all reports concerning "demographic, racial and social character-istics" of all East Chicago employees filed with the United States Equal Employment Opportunity Commission or the Indiana Civil Rights Commission.  The plaintiffs' rationale for seeking the information described in Request Numbers 4 and 8 is largely based on the existence of seven other claims filed in the North-ern District of Indiana, not those currently before the court. In

10

the three cases before the court, only one contains allegations of race-based discrimination.

Further, no broad defense that implicates city-wide discovery of the racial and "social characteristics" of every East Chicago employee has been raised. Though plaintiffs state that they believe East Chicago will argue that racial balance motivated the termination, demotion, or transfer of employees, East Chicago has not raised this defense. Instead, the relevance of the racial composition, age, or residence of other East Chicago employees is based upon its ability to provide relevant comparisons between existing employees and plaintiffs who have raised racial discrimination claims. Under these circumstances, absent a showing of more particularized need, discovery is limited to the plaintiff's department or office.  *See e.g.* **Chavez**, 206 F.R.D. at 620; **Balderston**, 328 F.3d at 320.

The plaintiffs in Camarillo and Lopez have not raised claims of racial discrimination. Their reliance on the existence of other claims alleging race discrimination, but not before the court, is insufficient to demonstrate the particularized need for expanding the discovery of racial information beyond the department in which the plaintiff was employed. The plaintiff in *Hurubean* has raised claims of racial discrimination. Accordingly, the motion to compel Request Numbers 4 and 8 with respect to both *Camarillo et. al. v. Pabey et. al.*, 2:05-cv-455, and *Lopez et. al. v. Pabey*, 2:05-cv-453 is **DENIED**. The motion to compel Request Numbers 4 and 8 in *Hurubean v. Pabey et. al.*, 2:05-cv-187, is

11

**GRANTED IN PART**, only with respect to the requested information applicable to the department in which the plaintiff was employed.

ENTERED this 21st day of September, 2006

                                         s/ ANDREW P. RODOVICH
                                              United States Magistrate Judge